The opinion of the Court was delivered by
Glover, J.
A valid testamentary disposition of property must be the voluntary act of a capable testator performed *245 according to prescribed statutory regulations. Substantially, these requirements have been complied with by the deceased in the paper propounded for probate. The subscribing witnesses proved the execution of it, and the testator’s capacity; and their opinion is entitled to consideration, as the law imposes upon them not only the duty to attest the signing, but requires that they shall be satisfied of the testator’s disposing memory before they attest. Tt is manifest that, from age, his body, was infirm and his understanding impaired, but he had not survived the exercise of those powers which enabled him to comprehend the act he was performing. A non sane memory means actual incapacity, and such a disability does not depend upon degrees of intelligence, or upon any well defined condition of the mind; which may be greatly impaired by time or disease, and yet retain sufficient strength to make a testamentary disposition of property. Admitting the capacity, it is contended that the testator’s mind was feeble from extreme old age, and consequently, less able to resist the illegal influence which might be employed to control him; — that for the natural objects of his bounty, whose ’ claims were strongly pressed by their misfortunes, he made. but a small provision — while a large benefit is secured to a stranger, who wrote, and as executor, propounds the will for probate; and that under these circumstances some evidence of the knowledge of the contents should have been offered, besides the signing and attestation.
Where a will is drawn by one deriving a large benefit under it, the law requires that the proof shall not only show the act of signing but a knowledge of the contents, (Paske vs. Ollatt, (2 Phill. 323.) and that where the capacity is doubtful there must be proof of instructions or reading over. (Billinghurst vs. Vickers, 1 Phill. 193.) This rule as was said in McNinch vs. Charles, (2 Rich. 229,) is not exclusive and universal, but, in its application, is modified by the circumstances of each particular case. Referring to this class of *246 cases, Dr. Lushington says: “ The doctrine is, that proof of the knowledge of the contents may be given in any form; that the degree of proof depends on the circumstances of each case; that in perfect capacity knowledge of contents may be presumed, but that when the capacity is weakened, and the benefit to the drawer of the will is large, the presumption is weaker, the suspicion is stronger; the proof must be more stringent and the Court must be satisfied of a knowledge of the contents beyond the proof of execution. I have always understood the doctrine to be that, in case of suspicion (which, depends upon all the circumstances of the case,) the proof is to be in proportion to the degree of suspicion.” Durnell vs. Corfield, 1 Robertson, Ecc. 51.) Every rule that has been adopted is intended to aid the Court and Jury in ascertaining if the will is the act of a capable testator, subject to no influence controlling his free agency. In this case the testator was more than eighty years of age — infirm and feeble in body and mind — reposing great confidence in John McKnight who wrote the will and who is appointed the executor — and to whom he leaves the disposal and management of all his property, after the death of Robert. Soon after the making "" of the will he expressed dissatisfaction because no provision had been made for his grand-children, and he said he had sent for 'John McKnight, who would not come. Add to this the small provision made for his helpless and dependent children, and do not these circumstances create such suspicion in regard to the freedom of disposition, as requires proof of a knowledge of the contents beyond the mere signing and attestation? The testator left four children and two grandchildren — the former deaf, dumb and partially blind, and all poor. Their very infirmities were additional claims upon a fathér’s care and bounty, and yet the only provision he. has made for them is a support during the life of his son Robert, after whose death the disposal and management of all his property is given to John McKnight, who wrote the will and *247 is appointed the executor. Whether the words “ at his disposal and management ” gives an absolute interest or a life estate with an unrestrained power annexed, it is not material to inquire He has that dominion over the property which enables him to control its final disposition ; and although one or all of the children should survive Robert, they could no longer claim even a support under their father’s will. The evidence does not furnish a satisfactory foundation for the presumption that the testator knew the contents of his will. His declarations do not show a conformity between its provisions and his intention and wishes expressed before and after its execution. His purpose was to leave his property to Leander, but at the suggestion of McKnight, Robert was substituted — manifesting a ready acquiescence in McKnight’s advice — his grand-children are omitted, and a strong desire is expressed to provide for them — in all his conversations the objects of his bounty are his children and grand-children; yet the final dominion of his property is given to a stranger of whom he never spoke as a beneficiary in connexion with his will. If we add to this a feeble capacity without any proof of instructions or reading over or possession of the will, it becomes the duty of the chief devisee and legatee who drew the will to furnish more satisfactory evidence of a knowledge of the contents than the fact of execution.
The verdict of the jury shows that the evidence did not satisfy them that the testator knew the contents of the will and approved it, and we perceive no reason to doubt the correctness of their conclusion.
The case of Hobby et al. vs. Bobo & Dean, (a) executors, refer *248 red to in the argument is unlike the principal case. The testator Burrell Bobo produced the will when it was executed, *249 examined it “leaf by leaf,” inserted the day and month, declared that it was his will, directed it to be put in an envelope *250 and sealed, and after Ms death it was deposited with the Ordinary with the seals unbroken. In the absence of the more usual and conclusive evidence of instructions and reading over, these facts were enough to satisfy a jury that the testator knew the contents.
Motion dismissed.
O’Neall, Wabdlaw and Munbo, JJ., concurred.

Motion dismissed.

 Tlie following is tlie opinion of tlie Court of Appeals in tlie ease of Hobby vs. Bobo, delivered at Columbia, May Term, 1832, by
O’NealIi, J. This case falls within the rule laid down in Keller vs. Atkins, at the last Term, and a new trial must be ordered. In sending the ease bach it is desirable to so present the questions involved in it to the Circuit Court, as to avoid the necessity of another adjudication here.
*248 As is said in tlie ease of Tomkins vs. Tomkins, 1 Bail. 93, “if a man possess sufficient mind to transact tlie common business of life, there is no question but that he may make a will.” It is often difficult to say whether this capacity exists at the time the will is executed. The general legal presumption is that every person is capable : the want of capacity either generally, or at the time of execution is to be shown by the parties contesting a will. In this ease the plaintiffs on the appeal from the Ordinary have failed to show anything like a general want of capacity before the execution of the will; and at and after it the evidence of a capacity to transact the common business of life is abundant. There was, therefore, no ground on this part of the case, either in law or fact, to authorize the verdict.
It has been urged in favor of the verdict that if a legatee write the will, that it is an inflexible rule of law that to sustain it there must be proof of instructions, or that the will was read to or by the testator. The rule is too broadly stated. If a legatee write a will, by which-he takes a legacy, and the testator be in common health, and capable of reading or understanding it, and he formally executes it, the legal presumption is not against the will on account of its being written and prepared by one who takes a benefit from it. The presumption is, in such a case, in favor of the will. Bor in the language of my brother Johnson in Tomkins vs. Tomkins, “The usual and almost the only mode in which assent to a writing is manifested is by subscribing it, and in the absence of any other proof, that would be sufficient evidence of assent to a will as well as to any written contract.” In the case of Billingshurst vs. Vickers, 1 Phill. 193, the rule is stated by Sir John Nicholl tobe “ that when the capacity is doubtful at the time of execution, there must be proof of instructions or reading over.” In such a case he remarks that, ‘1 the presumption also is strong against an act to be done by the agency of the party benefitted; the act is not actually defeated as it was by the civil law, provided the intention can he fairly deduced from other circumstances.” Taking the rule and the qualification together, the result is that in a case where the testator is of doubtful capacity, it resolves itself into the question of fact, did the testator at the time he executed the will, know the nature and contents of the paper which he executed? If he does, it is good, no matter by whom it may be written, for we have the assent of his mind to the paper prepared as and for his will, in the fact of execution. That the inquiry which I have stated is the true one is apparent from the manner in which Sir John Nieholl propounds the matter to be considered in the case of Billingshurst vs. Vickers. He says, “ now in this case was the deceased’s capacity so alive as to prevent him from executing an instrument of the contents of whioh he was not *249 aware ? Or was lie so languid and reduced as to acquiesce in whatever might be proposed?” His argument proves that the negative of the first and the affirmative of the last question was true, and therefore he enforced the rule without qualification, and refused to admit that part of the will to probate which was written by Billinghurst. In Tomkins vs. Tomkins, the proof was that the testator neither read, nor heard read, that part of the will which disposed of the residue of his estate; it was, therefore, necessary to supply this want of knowledge of its contents by proof of instructions, and showing that the will was in conformity to them. But, if in that case, the testator had had the will in his possession long enough to have read it, and the case had rested on the presumption of his knowledge of its contents from the fact of execution, I have no hesitation in saying, that the will must have been sirstained. In Warley vs. Warley, decided at this place, May Term, 1828, Judge Nott, who delivered the opinion, said, “But I cannot suppose that it will ever be held as law, that a will executed by a person in good health, not in contemplation of a speedy dissolution, of sound and vigorous understanding, and in the full possession of all his faculties must necessarily be considered void, because the instructions were given by a person interested in it, and because there is no evidence that it was read over by the testator. I do not know that any extraordinary suspicion ought to attach itself to the execution of a will more than to any other instrument of writing. And it is unreasonable to suppose that a man of ordinary understanding, who was acquainted with business, would put his hand to any paper by wliich he was to be bound, or in which he was materially interested without knowing the contents.” These explanations of the rule and its application will enable the court and jury properly to pass on this part of the case. According to the proof, the testator was not of doubtful capacity, he had the will in his possession, he examined it page by page, dated and executed it by signing, sealing and making a formal publication. With such facts before us, it would be monstrous to conclude from the fact that it was written by the principal legatee, that therefore the testator did not know the nature and contents of the paper which he executed as his will.
The will is strangely prepared, the writing of each devise or bequest on a distinct page, is unusual, but furnishes no evidence of fraud in itself. It was I suppose thus prepared, to gratify the whim of a capricious and eccentric man. It was said that it was evident from the face of the will, that the residuary clause had been added to the bequest in favor of Joel Dean and Simpson Bobo, after the execution of the will. But on comparing the whole writing of the two parts of the bequest together, it is *250 manifest that it was written with the same pen and ink and most probably at the same’time.
If, however, the fact be'that the will from the time it was executed, until it was delivered to the Ordinary, remained in the envelope in which Col. Martin placed it, at the time it was executed, with the seals unbrokep, it is impossible that there could have been any fraudulent alteration. This fact was, we think, fully proved by Mr. Trimmier, who proved that he received it sealed up, and that he believed the word “sealed” written across the seals was in the handwriting of Col. Martin.
The motion for a new trial is granted.
Johnson and Habpek, JJ., concurred.